UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN D. BRIAN, individually; WILLIAM L. GOODMAN, individually; and DEBODEEP SANJU CHOUDHURY, individually,<br><br>　　　　　　Plaintiffs,<br><br>　　vs.<br><br>WAL-MART STORES, INC., a Delaware corporation; and ROBERT PEARSON, individually,<br><br>　　　　　　Defendants. | Case No. 4:14-cv-00139-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to strike and a motion for summary judgment, both filed by defendant Wal-Mart. The motions are fully briefed and at issue. For the reasons explained below, the Court will deny the motion for summary judgment and deem moot the motion to strike.

## BACKGROUND

This case began with three plaintiffs, but only two remain: John Brian and William Goodman. They are former Wal-Mart employees who claim to be victims of discrimination and retaliation for engaging in protected activity. They have sued Wal-Mart and its Store Manager Robert Pearson. Brian brings a claim under Title VII for

racial discrimination, and both Brian and Goodman bring claims for violation of the Family Medical Leave Act (FMLA).

Brian began working for Wal-Mart in November 2002, and was fired in 2011. He claims that he was mistreated and eventually fired by his supervisor, Store Manager Robert Pearson, for being Hispanic and for taking leave under the FMLA. Goodman began working for Wal-Mart in 2000. He claims that he was eventually forced to resign after Pearson constantly humiliated him for taking leave under the FMLA.

## ANALYSIS

### Wal-Mart's Motion for Summary Judgment – Brian

Wal-Mart seeks to dismiss Brian's claims of racial discrimination and violation of the FMLA. But this motion encounters a serious obstacle in the form of statements reflecting discriminatory animus attributed to defendant Robert Pearson, the Wal-Mart Store Manager who supervised Brian and made the decision to fire him.

Turning first to the racial discrimination claim, Brian has at least raised an inference that Pearson knew he was Hispanic because Pearson discussed this very point with Wal-Mart Store Manager Todd Van Valkenburg. *See Van Valkenburg Deposition, (Dkt. No. 45-5),* at p. 9.[1] Pearson referred to Brian as a "brown turd[] that needed to be flushed," *id.* at p. 9, and would refer to nonwhite employees "in a derogatory way" based on their race. *See Van Valkenburg Deposition, supra,* at pp. 8-9. Specifically, Pearson

---

[1] Van Valkenburg was a Wal-Mart Store Manager and thus his comments can be attributed to Wal-Mart under Rule of Evidence 802(d)(2)(D).

called an African-American employee "a poor old nigger looking for a paycheck." *Id.* at p. 12.  And, in referring to Native Americans, Pearson remarked that it was "too bad that they weren't from India . . . because they have a red dot on their forehead and it would be a much easier target to hit." *Id.* at p. 18.  When Pearson had to use the restroom he would say that he "had to go drop off the Obama babies and flush them down to China." *Id.* at p. 16.

Wal-Mart responds that even if these comments raise questions about racial animus, there is no evidence connecting the comments with Brian's firing.  While there may be no direct evidence, a reasonable juror could find that Pearson's callous comments at least raise an inference that he was racially motived in firing Brian.  The Ninth Circuit has held that "very little evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact-finder." *McGinest v. GTE Service Corp,* 360 F.3d 1103, 1124 (9th Cir. 2004).  Uncertainty at the summary judgment stage "must be resolved in favor of the plaintiff." *Id.*  Brian has submitted enough evidence to create questions of fact concerning whether he was fired due to his race.

Wal-Mart responds that it terminated Brian for a legitimate reason – poor work performance.  While Brian received multiple disciplinary notices during his employment, it is undisputed that Wal-Mart rated him a "solid performer" in 2009 and 2010.  *See Wal-Mart SOF (Dkt. No. 31-2)* at ¶ 4.  Store Manager Van Valkenburg testified that in 2011, the year when Brian was terminated, Brian was again rated a "solid performer."  *Van Valkenburg Deposition, supra* at p. 38.

MEMORANDUM DECISION AND ORDER - 3

This evidence creates genuine issues of fact over Brian's work performance and at least raises a question whether Wal-Mart's justification for the firing was pretextual. Finally, Wal-Mart argues summary judgment is proper because it replaced Brian with a Hispanic employee. While this fact is relevant to the racial animus issue, it does not compel the Court, as a matter of law, to ignore Pearson's conduct. *E.g.*, *Stewart v. United States*, 2000 WL 1705657, at *12 (N.D. Cal. Oct. 10, 2000) (holding that while hiring person of same race is relevant to employer's motive, it is not determinative).

Construing all facts in Brian's favor, the Court finds genuine issues of material fact surround whether Wal-Mart terminated Brian because of his race. The Court will therefore deny summary judgment for Wal-Mart on this claim. The Court finds similar questions over whether Brian was fired in retaliation for complaining about racial discrimination and will deny summary judgment on that claim as well.

The Court turns next to Brian's claim that he was fired in retaliation for taking leave under the FMLA. Wal-Mart argues that Brian has failed to come forward with evidence to support this claim.

To prevail under the FMLA, Brian must "prove by a preponderance of the evidence that [his] taking of FMLA-protected leave constituted a negative factor in the decision to terminate [him]." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001); 29 C.F.R. § 825.220(c). This can be shown by direct or circumstantial evidence, or both. *Id.* To withstand a defendant's summary judgment motion, the plaintiff must show there is a genuine issue of material fact as to whether the defendant considered FMLA leave when deciding to terminate the plaintiff. *Id.*

Wal-Mart contends Brian's FMLA leave did not contribute to its decision to terminate him. Indeed, Wal-Mart emphasizes that it had already initiated a course of disciplining Brian before he took FMLA leave, and the "next logical progression" was termination.

Yet the record contains evidence that raises questions of fact on this issue. Manager Todd Van Valkenburg testified that Pearson had made a "standard threat" that "someone who took FMLA didn't deserve to be a manager." *See Von Valkenburg Deposition (Dkt. No. 45-5)* at p. 41. Pearson directed Van Valkenburg to fire Brian, and told Van Valkenburg, "[y]ou're going to be terminating him [Brian] for job performance." *Id.* at p. 38. Van Valkenburg resisted, stating that he had not worked with Brian for months, and that Brian's latest review showed that he was a solid performer. *Id.* Van Valkenburg suggested that Pearson or another manager who had worked with Brian should do the firing. *Id.* at pp. 38-39. Pearson rejected that idea, stating that "No, you're going to be the one doing the termination. We don't want to look like – we don't want it to look like we're retaliating against him. He thinks we're picking on him. We don't want him to get the impression we're retaliating. We want you to do it." *Id.* at p. 39.

This evidence creates questions of fact over whether Pearson directed Van Valkenburg to fire Brian in retaliation for Brian's taking FMLA leave. Thus, the Court declines to grant summary judgment on the FMLA retaliation claim.

**Wal-Mart Motion for Summary Judgment – Goodman**

Wal-Mart seeks summary judgment on Goodman's claim that Wal-Mart constructively discharged him because he took FMLA leave. The parties were not able to uncover any Ninth Circuit decisions concerning whether an employee may obtain relief under the FMLA for constructive discharge. However, a decision by Judge Dale in this District found that an employee could obtain relief under the FMLA for constructive discharge, relying on the Fifth Circuit case of *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771-72 (5th Cir. 2001). *Bushfield v. Donahoe*, 912 F. Supp. 2d 944, 958 (D. Idaho 2012). The Court finds *Bushfield* and *Hunt* persuasive and will adopt them here.

In the Ninth Circuit, constructive discharge requires a plaintiff to prove that his workplace was so intolerable that a reasonable person in his position would have felt compelled to resign. *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007). Working conditions must deteriorate to the point that they become "sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Id.* (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000)). Several factors may be considered: demotion; reduction in pay or responsibilities; reassignment to menial or degrading work; badgering, harassment, or humiliation calculated to encourage the employee's resignation; or offers of early retirement that would make the employee worse off whether the offer was accepted or not. *Hunt*, 277 F.3d at 771-72. A plaintiff need not establish that his employer created the intolerable conditions with the intent to cause the employee to resign. *Poland*, 494 F.3d at 1184 n.7.

**MEMORANDUM DECISION AND ORDER - 6**

Construing all facts in Goodman's favor, the Court finds genuine issues of material fact preclude summary judgment for Wal-Mart on this claim. According to Goodman, while he generally experienced positive treatment at Wal-Mart, working conditions eventually became intolerable under Pearson after he began taking FMLA leave. Goodman took FMLA leave on three separate occasions. He took it for the first time in June of 2012 for a broken ankle. When he returned, Goodman was "called a pussy," apparently by Pearson although that is not clear from this testimony. *Goodman Deposition (Dkt. No. 45-4)* at p. 23. Goodman did testify that just after he returned from FMLA leave for his ankle, Pearson "went and stomped toward my foot like he was going to step on me," and "ridiculed and humiliated me in front of my peers and my subordinates." *Id.* at p. 23. Additionally, Pearson assigned Goodman to night shifts "a year and a month earlier than [Goodman] was supposed to" receive that assignment. *Id.* at p. 47.

Goodman next took FMLA leave in January 2013 for a ruptured spleen. When he returned to work, Pearson again called him a "pussy" and "wuss" in front of other Wal-Mart employees during meetings. *Id.* at p. 28. Moreover, Pearson continued staffing Goodman with night shifts, and told other Wal-Mart employees that Goodman would be stuck with the night shift "indefinitely." *Id.* at p. 48.

By April 2013, Pearson's treatment had caused Goodman to suffer stress and anxiety. *Id.* at p. 25. Consequently, Pearson's treatment prompted Goodman to take his third stint of FMLA leave. But this time, Goodman did not return to Wal-Mart. Feeling like Pearson had "harassed the heck out of me for taking LOA, calling me names, making

MEMORANDUM DECISION AND ORDER - 7

me feel terrible in front of my subordinates and peers," Goodman concluded that Wal-Mart had become an "unbearable work environment" and submitted his resignation. *Id.* at 27:20-23.

The Court cannot conclude as a matter of law that a reasonable person in Goodman's position would not have felt compelled to resign. Thus, the Court will deny summary judgment for Wal-Mart on this claim.

**Wal-Mart's Motion to Strike**

Wal-Mart seeks to strike plaintiffs' expert report prepared by F. Timothy Trujillo. The Court will deem the motion as moot because the Court did not rely on this report in any manner while resolving the motion for summary judgment. Wal-Mart is free to raise the motion again if this case proceeds to trial and Trujillo is a testifying witness.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to strike (docket no. 47) is DEEMED MOOT.

IT IS FURTHER ORDERED, that the motion for summary judgment (docket no. 31) is DENIED.

DATED: March 28, 2016

B. Lynn Winmill
Chief Judge
United States District Court